In re VENTURE PROPERTIES, INC., Debtor.

VENTURE PROPERTIES, INC., Plaintiff,

v.

ALTITE ROOFING, INC., Circle B Co., Inc., Dayton Bars & Counters, Inc., F.E. Harding Paving Co., Inc., Mid–West Building Service Contractors, Inc., L & R Electric Co., Inc., Skyline Construction, Inc., Spa Equipment Systems, Inc., d/b/a Floor Design, Charles Spartz, Clifford Spartz, d/b/a Spartz Construction, American National Bank, Defendants.

F.E. HARDING PAVING CO., INC., Plaintiff,

v.

VENTURE PROPERTIES, INC., American National Bank, Irving Materials, Inc., Willis McQueary, d/b/a McQueary Lumber Company, Altite Roofing, Incorporated, L & R Electric Co., Inc., Clifford Spartz, d/b/a Spartz Construction, Charles Spartz, Watermark Technology, Inc., Mid–West Building Service Contractors, Inc., Spa Equipment Systems, Inc., d/b/a Floor Design, Defendants.

Bankruptcy No. 88–30223–RKR. Adv. Nos. 89–3031, 89–3005.

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

June 19, 1990.

Jeffery A. Johnson and Patricia E. Primmer, South Bend, Ind., for Dayton Bars and Counters, Inc.

Anthony O. Crowell, Indianapolis, Ind., for F.E. Harding Paving Co., Inc.

Lynn M. Miller, Elkhart, Ind., for Midwest Building Service Contractors, Inc.

J. David Keckley, South Bend, Ind., and Jon E. Williams, Greenwood, Ind., for Spa Equipment Systems, Inc., d/b/a Floor Design.

J. Bradley Cook, Noblesville, Ind., for Clifford Spartz, d/b/a Spartz Const., and Charles Spartz.

Daniel F. Cummings, Indianapolis, Ind., for McQueary Lumber Co.

Deborah J. Caruso, Indianapolis, Ind., for Watermark Technology, Inc., and Altite Roofing, Inc.

Sheila A. Marshall, Carmel, Ind., for Circle B Co., Inc.

William I. Kohn, Lynn Tyler and Mark J. Adey, South Bend, Ind., for American Nat. Bank.

W.F. Kennedy, Jr., Indianapolis, Ind., for Dale R. Horning Co., Inc.

## ORDER

ROBERT K. RODIBAUGH, Senior Bankruptcy Judge.

On October 10, 1989, Spa Equipment Systems, Inc., d/b/a Floor Design ("Spa") filed its Motion for Summary Judgment concerning F.E. Harding Paving Co., Inc.'s Complaint filed in Adversary Proceeding No. 89–3005.[1] On November 24, 1989, F.E. Harding Paving Co., Inc. ("Harding") filed its own Motion for Summary Judgment both with respect to the debtor, Venture Properties, Inc.'s ("Venture") Complaint to Determine Validity and Priority of Mechanic's Liens in Adversary Proceeding No. 89–3031[2] and its own Complaint against the debtor and various defendants in Adver-

Joseph D. Bradley and Aladean M. DeRose, South Bend, Ind., for Venture Properties, Inc.

[1] Venture Properties, Inc., the debtor herein, filed its objection to Spa's motion on January 3, 1990. On February 12, 1990, the court entered its order permitting the debtor to withdraw its motion to enable the court to proceed to enter a decision on the merits of the parties' Motions for Summary Judgment without the need for a separate hearing on the debtor's objection.

[2] The debtor filed its Amended Complaint to Determine Validity and Priority of Mechanic's Liens on January 26, 1990, adding several parties as defendants.

sary Proceeding No. 89–3005.[3] On December 7, 1989, Ameritrust National Bank, f/k/a American National Bank of Noblesville ("Ameritrust") filed its Cross–Motion for Partial Summary Judgment with respect to Harding's Motion for Summary Judgment. Later, on December 29, 1989, Ameritrust filed its Cross–Motion for Partial Summary Judgment concerning Spa's Motion for Summary Judgment. The court held a hearing on the parties' motions for summary judgment on January 8, 1990, and took the matters under advisement on January 9, 1990.[4]

On March 26, 1990, Willis McQueary and Sadie McQueary, d/b/a McQueary Lumber (collectively "McQuearys"), who were added as defendants in the debtor's Amended Complaint to Determine Validity and Priority of Mechanic's Liens on January 26, 1990, filed their Motion for Summary Judgment concerning the debtor's complaint. On March 26, 1990, the parties submitted an agreed form of pre-trial order on the debtor's and Harding's complaints.[5] Thereafter, on April 2, 1990, the court held a trial on the complaints at which time debtor's counsel appeared and summarized the issues before the court, filed various exhibits which were admitted by agreement of the parties, and advised the court that the parties agreed that their briefs previously filed with the court and their positions as set forth in the pre-trial order would constitute their full submission on this matter. The court took the debtor's and Harding's complaints under advisement on April 4, 1990.

### Background

1. The underlying complaints

Venture filed its petition under Chapter 11 of the Bankruptcy Code on February 8, 1988. In its Amended Complaint to Determine Validity and Priority of Mechanic's

Liens Venture explained that Ameritrust is the mortgagee of certain property of the debtor located in Noblesville, Indiana.[6] Venture listed various defendants who hold mechanic's liens against the property and asserted defenses against the mechanic's liens, including (1) failure to timely file Notice of Intention to Hold Mechanic's Lien, (2) "defective and unworkmanlike performance," and (3) "unauthorized extras and change orders." Debtor's amended complaint at 3 (January 26, 1990). Venture further alleged that Altite Roofing, Inc., and Spa failed to file their Notices of Mechanic's Lien within sixty days after performing work on the premises, that Spa made unauthorized additions to its contract and performed inferior and defective labor, and that Harding and L & R Electric Co., Inc., charged for "extras" which Venture did not accept or authorize. *Id.* at 4. The debtor alleged that the mechanic's liens cloud the title to its property and asked the court to determine the validity and priority of each mechanic's lien with respect to the other mechanic's liens and the mortgage lien of Ameritrust. *Id.* at 4.

In its complaint Harding asked for similar relief submitting that it properly filed a Sworn Statement and Notice of Intention to Hold Mechanic's Lien in the amount of $31,690.00 with the Hamilton County Recorder on December 18, 1987, for labor and asphalt materials provided in the construction of the Ponderosa Restaurant on Venture's property. Harding's complaint at 1–2 (January 19, 1989). Harding explained that at the time it provided services to Venture Ameritrust only had advanced a portion of its construction loan to Venture. *Id.* at 3. Harding, too, named as defendants various entities which assert mechanic's liens on Venture's property. *Id.* In

---

**3.** At the pre-trial conference on May 22, 1989, the court granted Venture and Hardings' motions to consolidate Adversary Proceeding Nos. 89–3031 and 89–3005.

**4.** Since the parties agreed that their pleadings, exhibits, and briefs would constitute the full submission on this matter, there will be no need to rule upon the various parties' motions for summary judgment.

**5.** All of the parties involved in these consolidated proceedings except defendants L & R Electric Co., Inc., Skyline Construction, Inc., American National Bank, and Irving Materials, Inc., joined in the agreed form of pre-trial order.

**6.** Venture operates a Ponderosa Restaurant on this property which is commonly described as 825 Westfield Road, Noblesville, Indiana.

essence, both Harding's and Venture's complaints ask the court to determine the validity and priority of the various liens against Venture's property.

2. Liens in controversy

a. *Ameritrust's mortgage lien*

In the agreed form of pre-trial order submitted on March 26, 1990, the parties explained that Ameritrust holds a mortgage lien on Venture's property stemming from a mortgage executed on May 22, 1987, and recorded on June 17, 1987, in the office of the Hamilton County Recorder, in Hamilton County, Indiana. Pursuant to various loans extended to the debtor which were secured by its mortgage on Venture's property, Ameritrust made the following advances to Venture:

| Date | Amount |
| --- | --- |
| June 12, 1987 | $132,626.00 |
| July 12, 1987 | 13,000.00 |
| July 27, 1987 | 37,587.00 |
| August 13, 1987 | 20,768.00 |
| August 20, 1987 | 40,749.00 |
| **August 20, 1987** | **85,600.00** |
| September 9, 1987 | 77,611.00 |
| September 22, 1987 | 61,494.00 |
| **September 22, 1987** | **21,478.51** |
| October 9, 1987 | 89,878.00 |
| October 23, 1987 | 42,874.00 |
| **October 23, 1987** | **70,895.79** |
| November 5, 1987 | 83,448.00 |
| **November 5, 1987** | **38,025.70** |
| November 12, 1987 | 27,695.00 |
| | $843,730.00 |

Harding's complaint at 3 (January 19, 1989) and Ameritrust's answer to Harding's complaint at 3 (March 15, 1989) (adding those items listed in bold print). The original note which Venture executed in favor of Ameritrust on May 22, 1987, in conjunction with Ameritrust's mortgage on the property, indicates that the maximum amount which Ameritrust authorized Venture to borrow pursuant to the note was $628,-000.00. Plaintiff's Exhibit 10(a). In the note Venture acknowledged receiving $132,626.00 of the $628,000.00. *Id.* The note further provided that "future principal advances are contemplated" and stated that in order to receive such advances Venture was to submit its request for the same along with "building costs to be paid" in writing, by telephone, or in person at any Ameritrust office. *Id.* The note stated that the purpose of the loan was "[c]onstruction of Ponderosa restaurant." *Id.* Ameritrust asserts that its mortgage lien is superior to all mechanic's liens of record against Venture's property because it was executed and recorded prior to the date any construction began and before the mechanic's liens attached to Venture's property.

b. *Mechanic's liens*

In the pre-trial order the parties agreed that they do not dispute the validity and extent of Harding's and Spa's mechanic's liens and that the only issue remaining for the court to determine is the priority of the mechanic's liens (including the mechanic's liens of other defendants herein) in relation to the mortgage of Ameritrust. Pre-trial order at 3 (March 26, 1990). The pre-trial order noted that all mechanic's lienholders filed Notices of Intention to Hold Mechanic's Lien against Venture's property in the office of the Hamilton County Recorder in Hamilton County, Indiana. Specifically, the mechanic's liens in controversy include (in order of time of filing) that of:

Willis McQueary, d/b/a McQueary Lumber, filed on December 18, 1987, in the sum of $5,113.60, under instrument no. 8750032;

Harding filed on December 18, 1987, in the sum of $31,690, under instrument no. 8750115;

Altite Roofing filed on December 22, 1987, in the sum of $3,836, under instrument no. 8750310;

L & R Electric Co., Inc., filed on December 23, 1987, in the sum of $11,886.55, under instrument no. 8750333;

Clifford Spartz, d/b/a Spartz Construction, filed on December 28, 1987, in the sum of $5,720, under instrument no. 8750527;

Charles Spartz filed on December 28, 1987, in the sum of $1,770, under instrument no. 8750528;

Watermark Technology, Inc., filed on December 31, 1987, in the sum of $1,853.25 plus costs and interest, under instrument no. 8750869.

Skyline Construction, Inc., filed on December 31, 1987, in the sum of $1,853.25, under instrument no. 8750869; [7]

Mid–West Building Service Contractors, Inc., filed January 7, 1988, in the sum of $7,047.06, under instrument no. 8800403;

Spa filed on February 3, 1988, in the sum of $14,992, under instrument no. 8802099;

Circle B Co.[, Inc.,] filed on February 3, 1988, in the sum of $21,264.29, under instrument no. 8802113;

Dayton Bars & Counters, Inc., filed on February 11, 1988, in the sum of $10,376.67, under instrument no. 8802634; and

Dale R. Horning Co., Inc., d/b/a Architectural Glass & Metal Co. filed on February 17, 1988, in the sum of $4,260.14, under instrument no. 8802877;

Pre-trial order at 3–5.

Each of the mechanic's lienholders furnished labor and/or supplies used in the construction of the Ponderosa Restaurant located on the property. Specifically, Altite Roofing furnished labor, equipment, and materials for the roof of the building; Circle B Co., Inc., provided materials for and installation of a surewall system on the building and dumpster enclosure; Harding provided asphalt for repaving the property; Mid–West Building Service Contractors, Inc., furnished materials and labor for painting and drywall of the building; Charles Spartz provided fill dirt, top soil, and labor; Clifford Spartz, d/b/a Spartz Construction, furnished excavation services and provided use of equipment and labor; and Dale R. Horning Co., Inc., d/b/a Architectural Glass & Metal Co., provided glass, installed the storefront entrances, and furnished glazing. Plaintiff's Exhibits 1(a), 2(a), 4(a), 5(a), 8(a), 9(a), and 13(a). Dayton Bars & Counters, Inc., L & R Electric Co., Inc., Spa, Willis McQueary, d/b/a McQueary Lumber, and Watermark Technology, Inc., did not indicate on their Sworn Statements of Intention to Hold Lien the specific nature of the services and/or materials which they provided in the construction of the improvements on the property. Plaintiff's Exhibits 3(a), 6(a), 7(a), 11(a), and 12(a). The mechanic's lienholders filed their Sworn Statements of Intention to Hold Lien after Venture's execution of the mortgage and note in favor of Ameritrust and after Ameritrust advanced Venture funds pursuant to the mortgage and note. At the hearing on this matter Ameritrust's counsel indicated that Ameritrust provided the initial loan of $132,626.00 to Venture on June 12, 1987, and that construction of the improvements on the premises began on July 1, 1987.

Venture submits that Ameritrust's mortgage is valid, duly perfected, and enforceable. In addition, Venture contends the mechanic's liens of the defendants are valid. Venture asserts, though, that although Skyline Construction Co., Inc.'s ("Skyline") mechanic's lien is valid, that Skyline has no right to enforce its lien due to Venture's "substantial counterclaims and setoffs" against Skyline. Pre–Trial Order at 5. Venture further submits that the court should determine allowable fees and expenses in this matter upon appropriate application of the parties. Each of the defendants holding a mechanic's lien in turn contends its mechanic's lien is valid and does not contest the validity of lien's held by the remaining defendants. Generally, the mechanic's lienholders deny that their liens are subordinate to Ameritrust's mortgage lien.

### Discussion and Decision

This Order shall represent findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable in this proceeding by Bankruptcy Rule 7052. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(K) over which the court has jurisdiction pursuant to 28 U.S.C. § 157(b)(1). The parties having agreed that the mechan-

---

**7.** The court is unclear whether the date, amount, and instrument number of Skyline Construction, Inc.'s filing is correct because it mirrors that of Watermark Technology, Inc.

ic's liens of the defendants are valid, the court now finds the same. The court further finds that Ameritrust's mortgage is valid, duly perfected, and enforceable. The remaining issue before the court is whether Ameritrust's properly executed and recorded mortgage has priority over or parity with the defendants' subsequent mechanic's liens on Venture's property.

Indiana Code Chapter 32–8–3 deals with liens on real estate. Indiana Code § 32–8–3–2 thereof states in relevant part:

> *The entire land* upon which any such building, erection or other improvement is situated, including that portion not covered therewith, *shall be subject to lien to the extent of all the right, title and interest owned therein by the owner thereof,* for whose immediate use or benefit such labor was done or material furnished; and where ... the land is encumbered by mortgage, *the lien, so far as concerns the buildings erected by said lienholder, is not impaired by ... foreclosure of mortgage; but the same may be sold to satisfy the lien* and be removed within ninety [90] days after the sale by the purchaser.

Ind.Code Ann. § 32–8–3–2 (Burns 1980) (emphases added). Indiana Code § 32–8–3–5 in turn provides:

> The recorder shall record the notice [of intention to hold a lien], when presented.... All *liens so created* shall relate to the time when the mechanic or other person began to perform the labor or furnish the materials or machinery, and *shall have priority over all liens suffered or created thereafter, except the liens of other mechanics and materialmen, as to which there shall be no priority.*

Ind.Code Ann. § 32–8–3–5 (Burns Supp. 1989) (emphases added).

As the Indiana Supreme Court explained in *Ward v. Yarnelle*, 173 Ind. 535, 91 N.E. 7, 13–14 (1910), these statutes contemplate four different scenarios and provide priority rules for each. First, when a mechanic, other laborer, or supplier provides services or materials on unencumbered land, Indiana law subjects the entire land upon which the improvements are made and the improvements themselves to a lien in favor of the mechanic, laborer, or supplier to the extent of the owner's interest in the property. *Id.* at 13. Second, when the land is encumbered but contains no improvements, the mortgagee's interest is superior as to the land and mechanic's lienholders who have provided improvements on the land share equally in priority as to the improvements. *Id.* at 14. Third, if the mechanics, laborers, and/or suppliers perform labor or furnish materials prior to execution of the mortgage and file their notices of intent to hold mechanic's liens within the required time, their mechanic's liens relate back to the time when they began work or when they provided the materials and are superior to the mortgage lien with respect to both the land and improvements. *Id.* Finally, a mechanic's lien is inferior to a mortgage lien on land (even when the contract for labor or services is executed prior to execution of the mortgage) if the mechanic, laborer, and/or supplier does not perform labor or furnish materials prior to execution of the mortgage. *Id.* In such case the mechanic's lien has priority only as to the improvement itself. *Id.* The *Ward* court further noted that the purpose of the statutes setting forth the priority of liens on real estate "was to intervene in favor of the mechanic or laborer, and secure to him a return for what he has done in enhancement of the value of the land, and still not injure prior lienholders." *Id.* (citing *Wimberly v. Mayberry*, 94 Ala. 240, 10 So. 157, 14 L.R.A. 305, and notes (1891)).

Addressing the specific situation before it, the Indiana Supreme Court in *Ward* found that Indiana Code Chapter 32–8–3 failed to address the lien priority between a mortgage executed to raise funds for construction of improvements on property and the mechanic's liens of those who provided the labor and supplies necessary to complete the construction. The court concluded that as the mortgagee and the mechanic's lienholders were "engaged in a common enterprise" of improving the property and that completion of the improvement by the laborers and suppliers was necessary to protect the mortgagee's interest, "their eq-

uities [were] equal." 91 N.E. at 15. The court thus found that the mortgagee and the mechanic's lienholders were bound to take notice of the contributions of the other and that "[i]n good conscience neither ought to have priority over the other." *Id.* at 16. The court accordingly determined that if removing the improvement from the property was not practicable and the proceeds from the sale of the property were not sufficient to pay all of the lienholders, the proceeds should be prorated among the mortgagee and the mechanic's lienholders. *Id.*

■ Interpreting the *Ward* case as well as subsequent cases which have followed its rationale, the Court of Appeals of Indiana noted that the most important factor in *Ward* was that the mechanic's lienholders who furnished materials and labor with no prior obligation did so knowing that the purpose of the construction mortgage was to pay for improvements on the property. *Brenneman Mechanical v. First Nat. Bank*, 495 N.E.2d 233, 242 (Ind. App.1986) (citing *McLaughlin Mill Supply Co. v. Laundry Service, Inc.*, 95 Ind.App. 693, 184 N.E. 429 (1933)). As the *McLaughlin* court stated:

> While the mortgage in the case now before us does not disclose the purpose of the loan the evidence does disclose its purpose, and that the money loaned was used in payment for labor, equipment and material furnished for the construction of said building. It further discloses that at least part of the appellants, and other parties asserting mechanic liens, but not appealing, had notice of the purpose of the loan obtained and of the expenditure of the money secured in discharge of debts incurred in the erection of the building.

*Id.* (quoting *McLaughlin*, 95 Ind.App. at 704, 184 N.E. at 433). Applying the law to the case at hand, if the funds derived from Ameritrust's mortgage were used in the construction of the improvements on the property in controversy and the mechanic's lienholders had knowledge of the purpose of the loan when they performed their labor and/or services, Ameritrust's mort-

gage lien and the mechanic's liens would have equal priority. Conversely, if Ameritrust's loan was for purposes other than construction or if the lienholders performed their labor and/or services without knowledge of the purpose and effect of the loan, Ameritrust's mortgage would be superior to the mechanic's liens for labor and/or services performed after execution of the mortgage.

■ Initially, the court determines that removing the improvements from the real estate in controversy is impracticable. The court therefore must proceed to determine the priority of the parties' interests in the proceeds of the property assuming that the proceeds from the sale of the property will be insufficient to satisfy all of the liens thereon. Based upon the relevant law set forth above, the court concludes that Ameritrust's mortgage lien and the mechanic's liens are entitled to pro rata treatment. The note which Venture executed in favor of Ameritrust explicitly stated that its purpose was "[c]onstruction of Ponderosa restaurant." In addition, the note contemplated payment of building costs with the proceeds of the note in that it required Venture to submit "building costs to be paid" along with future advances. Based upon the note, mortgage, and other evidence before the court, the court concludes that as in *Ward v. Yarnelle*, 173 Ind. 535, 91 N.E. 7 (1910) and *Brenneman Mechanical v. First Nat. Bank*, 495 N.E.2d 233 (Ind.App.1986), cited herein, the parties in this case were involved in a common enterprise of constructing an improvement on property.

Certainly, given the fact that Venture had the obligation under the note to Ameritrust to submit building costs with its requests for future advances, the laborers and suppliers must have known that the purpose of Venture's mortgage and lien in favor of Ameritrust was to pay for the laborers and suppliers' services and materials provided in construction of improvements on the property. Presumably, the laborers and suppliers either had to provide their services and materials prior to submission of their invoices to Ameritrust or

had to provide estimates of their services and supplies to Venture beforehand so that Venture could obtain the funds for payment of their services and/or materials. Indeed, as in *Ward* both the lienholders and the mortgagee were bound to take notice of the other's interests realizing that if Ameritrust had not furnished the funds for construction, the laborers and suppliers would not be paid, and if the laborers and suppliers had not provided their services and materials, Ameritrust's mortgage interest in the land and improvements thereon would be worth considerably less. The court thus finds that "[i]n good conscience neither ought to have priority over the other" but that the mortgagee and the mechanic's lienholders should share equally in priority. The clearly stated purpose of the loan was for the construction of improvements on the property and the mechanic's lienholders who had no prior obligation to perform services or furnish supplies to Venture certainly must have known that the loan proceeds would be used to pay for the improvements.

### Conclusion

WHEREFORE, the court now grants Venture's Complaint to Determine Validity and Priority of Mechanic's Liens and Harding's Complaint finding that Ameritrust's mortgage lien and the mechanic's liens of record are valid and that they are entitled to equal priority except to the extent that Venture may have defenses against the lien of Skyline due to possible counterclaims and rights to setoff.

Pre-trial conference on any remaining issues stemming from Venture's and Harding's complaints and the other pleadings filed in these consolidated proceedings, including defenses which Venture may have against the mechanic's lien of Skyline and the parties' requests for attorney's fees, are now set for *July 24, 1990 at 11:00 a.m.,* in Room 201, U.S. Courthouse, 204 South Main Street, South Bend, Indiana. It is

SO ORDERED.