CITY SAVINGS BANK n/k/a LaPorte Savings Bank, Appellant,

v.

EBY CONSTRUCTION, LLC, Appellee.

No. 64A03–1012–MF–611.

Court of Appeals of Indiana.

Aug. 5, 2011.

Jeffrey A. Johnson, Trevor Q. Gasper, May • Oberfell • Lorber, Mishawaka, IN, Attorneys for Appellant.

R. John Wray, Wray Law Office, Fort Wayne, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

A construction company filed a complaint to foreclose on a mechanic's lien seeking recovery of the cost of labor and materials it provided during the construction of certain buildings and other facilities on commercial real estate owned by a trust. The bank that had loaned the money to the trust to fund the construction, which loans were secured by mortgages on the real estate, cross-claimed and then moved for summary judgment to foreclose on its mortgages. The trial court granted the bank's motion for summary judgment and entered a judgment of foreclosure with regard to the mortgages on the real estate.

Thereafter, the construction company filed an amended complaint and then moved for partial summary judgment asserting that its mechanic's lien has priority over the mortgages held by the bank. Although concluding that Indiana statutory and case law provides that the mortgages should have priority over the later-recorded mechanic's lien, the trial court granted partial summary judgment in favor of the construction company, ruling that the mechanic's lien has priority over the mortgages pursuant to principles of equity and on public policy grounds.

The bank brings this interlocutory appeal, raising several issues that we consolidate and restate as one dispositive issue: whether the trial court erred when it disregarded clear statutory directives upon equitable and public policy grounds. Finding error, we reverse the trial court's entry of partial summary judgment in favor of the construction company and remand for further proceedings.

## Facts and Procedural History

The undisputed facts indicate that, at all pertinent times, Adele A. Schmidt, as Trustee of Trust Number 3 (the "Trust"), has been the owner of certain real estate in Porter County (the "Real Estate"). On December 17, 2004, City Savings Bank n/k/a LaPorte Savings Bank ("LSB") loaned the Trust $360,000 for the purpose of making improvements to the Real Estate. That loan was not secured by a mortgage. On January 25, 2005, LSB loaned the Trust $2,025,000 pursuant to a promissory note, which loan was secured by a mortgage on the Real Estate recorded with the Porter County Recorder on February 23, 2005. The promissory note provided that the proceeds of the note were for "construction." Appellant's App. at 181. Thereafter, on August 3, 2007, LSB loaned the Trust $1,775,000 pursuant to another promissory note, which loan was secured by a mortgage on the Real Estate recorded with the Porter County Recorder on August 8, 2007. That promissory note also provided that the proceeds of the note were for "construction." *Id.* at 193.

The Trust designated Art Schmidt as its general contractor for the purpose of making improvements to the Real Estate. The Trust and Schmidt contracted with three different contractors, the second of which was Eby Construction, LLC ("Eby"). In November of 2006, the Trust contracted with Eby for the construction and alteration of a maintenance building, loading dock, elevator, cooling tower, production building, warehouse, block building, pumping area, and building on the Real Estate.[1] During the construction process, Eby provided labor and materials to the Trust valued at $487,149.95. On November 21, 2007, the Trust made a partial payment to Eby for its labor and materials in the amount of $178,403, leaving an unpaid balance of $308,746.95.

On February 25, 2008, within ninety days of providing its labor and materials, Eby timely recorded its notice of intention to hold a mechanic's lien on the Real Estate. Subsequently, on March 28, 2008, Eby filed its complaint against the Trust and LSB seeking, in part, to foreclose on its mechanic's lien. Eby's cause of action was consolidated with two other matters against the Trust involving the mechanic's liens of other contractors, including Vendramini Construction, LLC ("Vendramini"), that had supplied labor and materials to improve the Real Estate. Shortly after Eby filed its complaint to foreclose, the Trust used proceeds from its third loan with LSB to pay its debt to Vendramini.

LSB responded to Eby's complaint to foreclose on its mechanic's lien with a cross-claim for foreclosure asserting an interest in the Real Estate pursuant to its two prior-recorded mortgages. Thereafter, on May 20, 2009, LSB filed a motion for summary judgment seeking foreclosure of the mortgages. The trial court granted LSB's motion for summary judgment and entered a decree of foreclosure in favor of LSB on July 27, 2009. The judgment provided that LSB's "lien on the Real Estate is superior to all other liens and claims." *Id.* at 47. On December 29, 2009, Eby filed an amended complaint and, on April 12, 2010, filed a motion for partial summary judgment on two counts of its amended complaint. Eby's motion for partial summary judgment sought a decree of foreclosure by the trial court and a declaration that Eby's mechanic's lien has priority over LSB's mortgages as to the improvements made by Eby.

---

1. The original contractor was not paid by the Trust, and therefore the contractor filed and recorded a mechanic's lien. That contractor was eventually paid from funds derived from the second loan with LSB and the mechanic's lien was released.

On August 25, 2010, the trial court entered its "Discussion and Findings" followed by an order granting Eby's motion for partial summary judgment. In its discussion, the trial court concluded that, although Indiana statutory and case law clearly provides that LSB's mortgage liens should have priority over Eby's mechanic's lien, public policy dictates that Eby's lien be given priority in this case. The trial court was persuaded that LSB came to the court with "unclean hands." *Id.* at 209. Specifically, the trial court justified its public policy decision as follows:

> However, [LSB] seems to want the best of both worlds. Eby's argument that the bank comes to this Court with unclean hands is persuasive. [LSB] cannot disregard paying Eby Construction and then in the next breath assert that the improvements done by Eby directly relate back to the purpose and function of the loans. Public policy considerations should be factored into the decision due to [LSB's] actions.
>
> Public policy mandates that whoever is in the best position to avoid a loss should bear it. [*Provident Bank v. Tri–County Southside Asphalt, Inc.*, 804 N.E.2d 161, 165 (Ind.Ct.App.2004)]. Here, [LSB] was in the best position to avoid a loss. They were aware of the mechanic's lien by Eby when the bank allowed the third note which subsequently paid for the third contractor's improvements to the real estate. [LSB] essentially authorized the payment of the third contractor before the second contractor.

*Id.*

Accordingly, under the circumstances, the trial court determined that Eby's me-

chanic's lien has priority over LSB's mortgages to the extent of $439,639.92, which included the unpaid value of the labor and materials provided by Eby plus interest and attorney's fees. LSB filed its motion to correct error on September 15, 2010. Following a hearing, the trial court denied LSB's motion. This interlocutory appeal ensued.

**Discussion and Decision**

■ LSB appeals the trial court's entry of partial summary judgment in favor of Eby. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, we stand in the shoes of the trial court and apply the same standards in deciding whether to affirm or reverse summary judgment. *Ramirez v. Wilson*, 901 N.E.2d 1, 2 (Ind.Ct. App.2009), *trans. denied.* The party appealing the grant of summary judgment bears the burden of persuading this Court that the trial court's ruling was improper. *Id.* Statutory interpretation presents a pure question of law for which summary judgment is particularly appropriate. *Id.* Where, as here, the relevant facts are undisputed and the issue presented on appeal is a pure question of law, we review the matter de novo. *Id.*

■ LSB raises several issues on appeal, one of which is dispositive. LSB asserts that the trial court erred when it granted Eby's motion for partial summary judgment and determined that Eby's mechanic's lien has priority over LSB's prior-recorded mortgages.[2] Specifically, LSB

2. We note that LSB asserts on appeal that Eby waived its right to even assert the priority of its mechanic's lien in a motion for partial summary judgment because Eby failed to bring an interlocutory appeal from the trial court's prior entry of summary judgment and

contends that the trial court erred when it concluded that, despite clear statutory and case law which provides that LSB's mortgage liens are superior to Eby's mechanic's lien, Eby's lien should be given priority over the mortgages based upon equitable principles and public policy grounds. We agree with LSB.

Recently, this Court considered the question of mortgage lien priority versus a later-recorded mechanic's lien as to improvements provided on commercial property. In *Harold McComb & Son v. JPMorgan Chase Bank*, 892 N.E.2d 1255 (Ind.Ct.App.2008), we recognized that resolution of the priority issue turns on the interplay among three statutes relating to the priority of liens. *Id.* at 1259. The first statute, Indiana Code Section 32–21–4–1(b) provides, in pertinent part, that "[a] conveyance, mortgage, or lease takes priority according to the time of its filing." Accordingly, we have held that a mortgage lien is superior to a mechanic's lien " 'if the mortgage was recorded before the mechanic's work was begun or material furnished.' " *Id.* (quoting *Provident Bank v. Tri–County Southside Asphalt, Inc.*, 804 N.E.2d 161, 163 (Ind.Ct.App.2004), *trans. denied* ).

The next relevant statute, Indiana Code Section 32–28–3–2 provides:

> (a) The entire land upon which the building, erection, or other improvement is situated, including the part of the land not occupied by the building, erection, or improvement, is subject to a lien to the extent of the right, title, and interest of the owner for whose immediate use or benefit the labor was done or material furnished.
>
> (b) If:
>
> (1) the owner has only a leasehold interest; or
>
> (2) the land is encumbered by mortgage;
>
> the lien, so far as concerns the buildings erected by the lienholder, is not impaired by forfeiture of the lease for rent or foreclosure of mortgage. The buildings may be sold to satisfy the lien and may be removed not later than ninety (90) days after the sale by the purchaser.

We have stated that "[t]he plain language of this statute protects the mechanic lien holder inasmuch as it protects his priority as to the improvement for which he provided the labor and materials." *Provident Bank*, 804 N.E.2d at 164. "The statute contemplates that the holder of a mechanic lien may sell the improvements to satisfy the lien and remove them within ninety days of the sale date." *Id.* In *Harold McComb*, we noted that Indiana Code Section 32–28–3–2 "seems to favor the mechanic's lienholder with regard to new improvements even if the mortgage is recorded before the mechanic's lien is recorded and before the mechanic's lienholder begins its work or furnishes any materials." 892 N.E.2d at 1259.

■ However, we went on in *Harold McComb* to consider the more specific statutory language provided in Indiana Code Section 32–28–3–5(d), our third relevant statute. Subsection 5(d) provides that, as to commercial property, "[t]he mortgage of a lender has priority over all

---

decree of foreclosure in favor of LSB. Eby responds by asserting that LSB has waived its right to argue waiver on Eby's part because LSB did not raise that argument to the trial court. It is well settled that we prefer to decide cases upon the merits whenever possible, *see Kelly v. Levandoski*, 825 N.E.2d 850, 856 (Ind.Ct.App.2005), *trans. denied*, and because we reverse on substantive grounds, we decline to address the parties' respective contentions of waiver.

liens created under this chapter that are recorded after the date the mortgage was recorded, to the extent of the funds actually owed to the lender for the specific project to which the lien rights relate." Ind. Code § 32–28–3–5(d).[3] This language appears to give priority to the mortgage of a lender as long as it is recorded first, in contrast to the language in Indiana Code Section 32–28–3–2 that seems to favor the mechanic's lienholder with regard to new improvements even if the mortgage is recorded before the effective date of the mechanic's lien. *See Harold McComb*, 892 N.E.2d at 1260. Consequently, applying the principle of statutory construction that the more specific statute prevails and shall be applied, we determined that Indiana Code Section 32–28–3–5(d) provides the more specific rule with regard to the priority over improvements on commercial property where the funds from the loan secured by the mortgage are intended to finance those improvements and where the mortgage is recorded before the mechanic's lien. *Id.* at 1262. Thus, we held that "[w]ith regard to commercial property, where the funds from the loan secured by the mortgage are for the specific project that gave rise to the mechanic's lien, the mortgage lien has priority over the mechanic's lien recorded after the mortgage." *Id.*

In the present case, it is undisputed that the Real Estate is commercial property and that LSB's mortgages were recorded before Eby's mechanic's lien. Moreover, the trial court concluded, and the parties do not dispute, that the funds from LSB's mortgage loans were for the specific project that gave rise to Eby's mechanic's lien.[4] Therefore, pursuant to our holding in *Harold McComb*, Indiana Code Section 32–28–3–5(d) controls and LSB's mortgages have priority over Eby's mechanic's lien.

▮ The trial court acknowledged the clear import of our statutory and case law, yet opted to reach a different result under the guise of equity and public policy. Foreclosure actions are essentially equitable in nature, and trial courts have full discretion to fashion equitable remedies that are complete and fair to all parties involved. *Robert Neises Constr. Corp. v. Grand Innovations, Inc.*, 938 N.E.2d 1231, 1234 (Ind.Ct.App.2010). The trial court was persuaded that LSB came to the court with "unclean hands" because LSB supplied the Trust with proceeds from a third promissory note to pay a subsequent contractor, Vendramini, for its improvements

---

**3.** Subsection 5(d) does not apply, and therefore does not prioritize a mortgage over a mechanic's lien, for the development or construction of three categories of projects: (1) houses; (2) improvements auxiliary to houses; and (3) property controlled by a utility. *Lincoln Bank v. Conwell Constr.*, 911 N.E.2d 45, 48 (Ind.Ct.App.2009), *trans. denied.* For those three categories, a mortgage and a mechanic's lien are equal in priority. *Id.* (citing *Ward v. Yarnelle*, 173 Ind. 535, 91 N.E. 7, 15 (1910), *overruled on other grounds by Moore–Mansfield Constr. Co. v. Indianapolis, New Castle & Toledo Ry. Co.*, 179 Ind. 356, 101 N.E. 296, 300 (1913)).

**4.** At the trial court level, Eby argued that the mortgage loans did not specifically list the exact buildings and improvements built pursuant to Eby's contract and therefore the funds actually owed to LSB were not for the "specific project to which the lien rights relate." Ind.Code § 32–28–3–5(d). The trial court determined that Eby was taking the meaning of the phrase "specific project" too literally. The court concluded that it was sufficient that the loans specifically stated that their purposes were for "construction" and that it is undisputed that the proceeds of the loans were disbursed for the construction of chemical production, warehouse, and storage facilities on the Real Estate. Appellant's App. at 208. Eby does not challenge that conclusion on appeal.

to the Real Estate knowing full well that Eby remained unpaid by the Trust for Eby's improvements. The payments to Vendramini occurred after Eby had already recorded its mechanic's lien and after Eby had filed its complaint to foreclose to which LSB was made a party. The trial court frowned upon the fact that LSB "essentially authorized the payment of the third contractor before the second contractor." Appellant's App. at 209. As LSB was on notice of Eby's mechanic's lien before it disbursed those funds on behalf of the Trust, the trial court concluded that LSB was in the best position to avoid a loss in this case. Accordingly, the trial court determined that Eby's mechanic's lien should be given priority based upon LSB's behavior and on public policy grounds regarding loss avoidance.

■■■ While we agree with the trial court that "[p]ublic policy holds that he who is best able to avoid a loss should bear it," *see Provident Bank*, 804 N.E.2d at 165, we disagree that the undisputed designated evidence shows that LSB came to the court with unclean hands or was in the best position to avoid the loss here. The equitable doctrine of "unclean hands" provides that one who seeks relief in a court of equity must be free of wrongdoing in the matter before the court. *Hopper Res., Inc. v. Webster*, 878 N.E.2d 418, 422 (Ind. Ct.App.2007), *trans. denied* (2008). Obviously, we do not condone the Trust's decision to pay Vendramini, a subsequent contractor, when the Trust had not yet paid Eby. However, we do not view that decision as an act of unclean hands on the part of LSB in the matter before the court, as LSB did not and was under no obligation to control the Trust's decision.

Additionally, we fail to see how the Trust's decision put LSB in a better position than Eby to avoid a loss such that LSB should lose its statutory priority status. As we noted in *Provident Bank*, "[r]ecording acts were passed for the purpose of providing a place and a method by which an intending purchaser or encumbrancer can safely determine just what kind of a title he is in fact obtaining." *Provident Bank*, 804 N.E.2d at 165 (citations and quotation marks omitted). Thus, "a mechanic who fears non-payment for his labor and materials may easily determine whether the property upon which he will work is encumbered." *Id.* The Real Estate was clearly encumbered by LSB's first recorded mortgage at the time Eby contracted with the Trust to provide improvements. Eby knew that the Real Estate was commercial property, that it was encumbered by a mortgage, and that the loans secured by the mortgage were for the specific construction project that gave rise to Eby's mechanic's lien. Eby was in the best position to avoid a loss because, at the time of contracting, Eby knew exactly what kind of lien it would be getting regarding its improvements to the Real Estate: an inferior one.

■■■ The trial court, although attempting to use its equitable powers to achieve what it believed to be a more fair and balanced result, failed to appreciate the importance of the doctrine " 'equity follows the law.' " *Hopper Resources*, 878 N.E.2d at 422 (quoting 12 I.L.E. *Equity* § 22). While equity has the power, where necessary, to pierce rigid statutory rules to prevent injustice, where substantial justice can be accomplished by following the law, and the parties' actions are clearly governed by rules of law, equity follows the law. *Porter v. Bankers Trust Co. of California, N.A.*, 773 N.E.2d 901, 908 (Ind.Ct. App.2002). Because there is nothing in the designated evidentiary material to indicate that substantial justice cannot be accomplished by following the law, and the parties' actions are clearly governed by

our priority statutes, equity must follow the law.

Neither the trial court nor Eby has supplied us with a compelling reason to disregard the clear intent of our legislature when it enacted Indiana Code Section 32–28–3–5(d). That intent was to "fill the statutory gap" and expressly address the lien priority between a mortgage executed to raise funds for construction of improvements on property and the mechanic's liens of those who provided the labor and supplies necessary to complete the construction. *See Harold McComb*, 892 N.E.2d at 1262. In sum, under the circumstances presented, it would eviscerate our decision in *Harold McComb* and the intent of the legislature in enacting the specific language of Indiana Code Section 32–28–3–5(d) to give priority to Eby's mechanic's lien over LSB's mortgages. Therefore, we conclude that the trial court erred when it granted Eby's motion for partial summary judgment. The mortgages are superior. We reverse the partial summary judgment entered by the trial court and remand for further proceedings consistent with this opinion.

Reversed and remanded.

ROBB, C.J., and NAJAM, J., concur.